UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

LINDA FAY RIGNEY,        )
                       )
       Plaintiff,        )         Civil No. 12-15-GFVT
                       )
V.                    )
                       )
MICHAEL J. ASTRUE,      )     **MEMORANDUM OPINION**
Commissioner of Social Security,  )             **&**
                       )          **ORDER**
                       )
       Defendant.      )
                       )

*** *** *** ***

The plaintiff, Linda Rigney, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of an administrative decision of the Commissioner of Social Security ("Commissioner") denying Rigney's application for Disability Insurance Benefits ("DIB").[1]  The Court, having reviewed the record and for the reasons stated herein, will deny Rigney's Motion for Summary Judgment [R. 9], and grant that of the Commissioner [R. 10.]

# I

Rigney filed an application for DIB on March 28, 2008. [Transcript ("Tr.") 209.] She alleges disability, beginning October 1, 2006, due to chronic degenerative spinal disease.  [Tr. 209, 251.]  Rigney's application was denied initially on May 6, 2008 [Tr. 120] and upon reconsideration on September 1, 2008 [Tr. 121.]  An Administrative

---

[1] Rigney also filed an application for Supplemental Security Income but was found ineligible to receive it due to excessive income.  [Tr. 122-127.]  The plaintiff does not challenge this denial on the current appeal.

hearing was conducted before Administrative Law Judge ("ALJ") Deborah Smith on August 24, 2010 . [Tr. 31-94.]  During the hearing, the ALJ heard testimony from Rigney, Medical Advisor ("MA") Dr. Richard Hutson, and Vocational Expert ("VE") George Parsons.  At the time of the hearing, Rigney was a forty-five-year-old former cashier with limited education.  [Tr. 22.]

In evaluating a claim of disability, an ALJ conducts a five-step analysis.  See 20 C.F.R. 416.920.[2]  First, if a claimant is working at a substantial gainful activity, he is not disabled.  20 C.F.R. § 416.920(b).  Second, if a claimant does not have a severe impairment, he is not disabled.  20 C.F.R. § 416.920(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix I, he is disabled.  20 C.F.R. § 416.920(d).  Fourth, if a claimant's impairments do not prevent him from performing past relevant work, he is not disabled.  20 C.F.R. § 416.920(e).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education and past work) prevent him from performing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 416.1520(f).

In this action, at Step 1, the ALJ found that Rigney had not engaged in substantial gainful activity since the DIB alleged onset date of October 1, 2006 through her date last

---

[2]The Sixth Circuit Court of Appeals summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile. *Id.* at 474.

insured of June 30, 2008. [Tr. 15.] At Step 2, the ALJ found that Rigney suffered from severe impairments relating to degenerative disc disease of the cervical and lumbosacral spine, depression, alcohol and marijuana abuse, an adjustment disorder and anxiety. *Id.* At Step 3, the ALJ found that Rigney's impairments did not meet or equal one of the listed impairments. [Tr. 17.] At Step 4, the ALJ determined that Rigney possessed the residual functional capacity ("RFC") to perform a restricted range of light level work and could return her past relevant work. [T. 19, 22.] Although the case was decided before Step 5 was reached, as an alternative, the ALJ also determined that a significant number of other jobs remained available in the national economy which Rigney could perform. Accordingly, on November 18, 2010, the ALJ issued an unfavorable decision, finding that Rigney was not disabled, and therefore, not eligible for DIB. [Tr. 23.] The Appeals Council declined to review the ALJ's decision on November 8, 2011 [Tr. 1-3] and Rigney now seeks judicial review in this court.

## II

### A

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g).; *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*; 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

In determining the existence of substantial evidence, courts must examine the record as a whole.  *Id*.  However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations.  *Id*.  Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-390 (6th Cir. 1999).

## B

Rigney's first argument on appeal is that ALJ erred by failing to clearly set out the factual and legal basis for the denial decision.  The plaintiff notes that the ALJ made findings with regard to her severe impairments in Step 2, but did not explain how each of these significantly limited her as required by 20 C.F.R. § 404.1520(c).  She also asserts that the ALJ failed to adequately explain the evidentiary basis for the RFC findings in Step 4.  The ALJ reviewed and discussed the medical record.  [Tr. 15-21).  In this discussion, the ALJ noted the opinions of treating sources such as Dr. John Kelly, Dr. Esther Saalfeld,  and psychologist Laura Bolte, examining sources such as Psychologist Robert Noelker, and non-examining sources such as the MA Dr. Hutson.  Reasons were cited as to why the ALJ thought the opinions of some sources were entitled to more weight than others.  The ALJ also discussed issues relating to the Rigney's credibility.  [Tr. 20-21].  Under these circumstances, the court finds no error in the ALJ's outlining of the factual basis for her denial decision.

**C**

Rigney argues that the ALJ erred in assessing her physical condition by rejecting the opinion of Dr. Kelly, a treating source, in favor of the opinion of Dr. Hutson, the non-examining MA.  Under the federal regulations, a treating physician's opinion is normally entitled to superior weight and when this opinion is not given such deference, the ALJ is required to cite good reasons for this action.  20 C.F.R. § 404.1527(d)(2).  The Sixth Circuit Court of Appeals has found that the failure of the administration to follow its own procedural requirements can constitute reversible error even if the case is otherwise supported by substantial evidence.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004).  Dr. Kelly indicated that Rigney would be limited to lifting ten pounds frequently and twenty pounds occasionally, an inability to sit for more than four hours a day in two-hour segments, an inability to stand for more than a total of one-hour a day in thirty-minute intervals, would be limited to occasionally reaching, handling, fingering, feeling, pushing and pulling, would be limited to occasionally using foot controls, limited to no more than occasionally climbing ramps and stairs, stooping, kneeling and crouching, an inability to ever climb ladders or scaffolds, balance or crawl, and a need to avoid exposure to unprotected heights, humidity, wetness, temperature extremes and vibration.  [Tr. 639-644.]  These are more severe physical restrictions than those found by the ALJ.  [Tr. 19.]  When these restrictions were presented to the VE, he indicated that full-time work could not be performed.  [Tr. 82-83.]

The ALJ rejected  Dr. Kelly's opinion because she felt that it was based primarily upon the plaintiff's subjective complaints.  [Tr. 21]  This finding appears appropriate.  A physical examination in October of 2006 revealed no sign of  lower extremity weakness,

sensory loss, or reflex loss.  [Tr. 15, 424.]  X-rays of  the lumbosacral spine in December

of 2006 showed only mild degenerative disc disease at L5-S1.  [Tr. 15, 421.]  An x-ray of

cervical spine showed only small anterior osteophytes compatible with degenerative disc

disease.  [Tr. 15, 417.]  An x-ray of the thoracic spine was within normal limits.  [Tr. 15,

434.]  An MRI scan of the lumbar spine in January of 2007 showed only mild

degenerative disc disease at L4-L5.  [Tr. 15, 356.]   In January of 2008,  Dr. Kelly

indicated that muscle strength and tone was normal in the extremities.  [Tr. 15-16, 435.]

Sensation was intact and gait was normal.  *Id*.  An April, 2008 EMG/NCV revealed only

questionable evidence of carpal tunnel syndrome in the right upper extremity and was

otherwise normal.  [Tr. 16, 692.]  The ALJ's finding was also influenced by the opinion

of Dr. Hutson, the MA, who testified that Dr. Kelly's physical restrictions appeared to be

based upon subjective complaints rather than objective findings such as findings of

neurologic deficits.  [Tr. 18, 68-69.]  Under these circumstances, the ALJ had good

reasons to reject the opinion of Dr. Kelly.

Dr. Hutson opined that Rigney could perform light level work.  [Tr. 68.]  He

indicated agreement with physical restrictions noted by Dr. Parandhamulu Saranga, a

non-examining medical reviewer, who restricted the plaintiff to light level work, reduced

from a full range by an inability to more than occasionally climb ladders,  ropes and

scaffolds and to need to avoid concentrated exposure to vibration.  [Tr. 68, 527-534.]  Dr.

Hutson later reviewed evidence relating to Rigney's physical condition and opined that

these additional reports did not change his opinion.  [Tr. 719.]  An ALJ may rely upon the

opinion of a non-examiner over that of an examining source when the non-examiner

clearly states the reason for his differing opinion.  *Barker v Shalala*, 40 F.3d 789, 794

(6th Cir. 1994).  The ALJ incorporated these physical restrictions into his RFC and these were presented to the VE who indicated that the past work as a cashier could still be done along with a significant number of other jobs.  [Tr. 81-82.]  Therefore, the ALJ dealt properly with the evidence of record relating to Rigney's physical condition.

### D

Rigney also argues that the ALJ erred in evaluating her mental condition.  The mental factors found by the ALJ included a an ability to understand, remember and sustain attention for routine simple matters requiring minimal judgment for extended periods of two hours segments and an ability to relate adequately in an object-focused setting in which she could adapt to expected, routine task demands.  [Tr. 19.]  When these restrictions were presented to the VE , he indicated that the past cashiering work along with a number of other jobs could still be performed.  [Tr. 81.].  The restrictions were compatible with the opinion of Psychologist H. Thompson Prout, a non-examining medical reviewer.  [Tr. 523-525.]

First, Rigney asserts that the ALJ erred in rejecting the opinion of Dr. Saalfeld, a treating source at the Summit Medical Group.  Dr. Saalfeld indicated that Rigney would be moderately limited in understanding, remembering, and carrying out complex instructions, making judgments on complex work-related decisions, interacting with supervisors and co-workers, and responding to usual work situations and to changes in the work environment.  [Tr. 647-648.]   Rigney argues that the ALJ impermissibly rejected this opinion because Dr. Saalfeld was not a psychiatrist. However, while the ALJ noted that Dr. Saalfeld was not a psychiatrist, she did not reject the opinion.  [Tr. 21.] The mental restrictions of Dr. Saalfeld were presented to the VE who indicated that all

the jobs cited in response to the prior hypothetical question could still be performed. [Tr. 84-85.] The ALJ noted the VE found that Dr. Saalfeld's restrictions were not work preclusive. [Tr. 21.] Thus, the ALJ's findings were consistent with Dr. Saalfeld's opinion. Clearly, the opinion of this treating source does not support does Rigney's disability claim and actually supports the administrative denial decision. Therefore, the court finds no error.

Rigney asserts that the ALJ erred in rejecting the opinion of Psychologist Laura Bolte. Bolte began treating the plaintiff in July of 2008. [Tr. 536.] This was after the expiration of the plaintiff's DIB-insured status on June 30, 2008. [Tr. 15.] Bolte specifically indicated that her opinion only related to the time period she had been treating Rigney. [Tr. 536.] The psychologist also appeared to take into consideration physical problems beyond her expertise. [Tr. 538.] The ALJ cited both these factors in reaching her decision to give the opinion little weight. [Tr. 19.] Therefore, the court finds no error.

Finally, Rigney argues that the ALJ erred in relying upon the opinion of Dr. Noelker, an examining consultant, in evaluating her mental status. The ALJ indicated that she was giving greater weight to the opinion of Dr. Noelker. *Id*. Rigney notes that Dr. Noelker actually imposed more severe mental limitations than found by the ALJ, including a severely impaired ability to adapt and tolerate the stress of day-to-day work activities and a moderately to severely impaired ability to sustain attention and concentration and perform social interactions. [Tr. 506.] The opinion of a one-time examiner is not entitled to the same deference as that of a treating source. *Atterberry v. Sec. of Health and Human Servs.,* 871 F.2d 567, 572 (6th Cir. 1989). The administrative

denial decision was consistent with the opinions of Dr. Saalfeld and Prout.  Therefore, any error in the ALJ relying upon Dr. Noelker was harmless.

**III**

Accordingly, and the Court being sufficiently advised, it is hereby ordered as follows:

(1) Plaintiff's motion for Summary Judgment [R.  9] is **DENIED**;

(2) Defendant's Motion for Summary Judgment [R. 10] is **GRANTED**; and,

(3) **JUDGMENT** in favor of the defendant will be entered contemporaneously herewith.

This the 11th day of January, 2013.



**Signed By:**

*Gregory F. Van Tatenhove*

**United States District Judge**